IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JODEE GARRETT, SR.,

      Plaintiff,                              No. CIV S-06-1904 RRB EFB P

    vs.

JAMES WALKER, et al.,                ORDER AND FINDINGS AND
                                                    RECOMMENDATIONS
    Defendants.

_____/

       Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action proceeds on the September 14, 2006, verified first amended complaint which includes the following claims: (1) that defendants Rustad and Naramore violated plaintiff's Eighth Amendment rights by requiring that he work among general population prisoners even though they knew he was in protective custody, resulting in another prisoner attacking plaintiff on December 7, 2005; (2) that during the attack defendants Saldona and Cortes failed adequately to protect plaintiff; (3) that defendants Walker, Minor, Garcia, Moreno, Vance and Neis knew there was inadequate security for protective custody prisoners safely to work in the general population, but allowed plaintiff to be placed in a job requiring him to come into contact with general population prisoners. Defendants Walker, Minor, Garcia, Moreno, Vance and Neis move for summary judgment. For the reasons explained below, the

1

court finds that there is no genuine issue for trial with respect to plaintiff's claims against Walker, Minor, Garcia, Moreno, Vance or Neis.[1]

## I. Plaintiff's Request to Continue Summary Judgment

Plaintiff seeks additional time for discovery. In particular, he seeks documents detailing the policies and procedures in place on December 7, 2007, governing whether and when "EOP"[2] and "non-EOP" prisoners at the prison's A-facility were permitted to mix.

A court may deny a motion for summary judgment or continue proceedings thereon to permit discovery when an opposing party shows by affidavit that it cannot present facts essential to justify the party's opposition. Fed. R. Civ. P. 56(f). As the party opposing summary judgment, plaintiff's burden to prevail on this request is high:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). This standard requires the party seeking a continuance to "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Fransisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). As explained below, what is necessary for plaintiff successfully to oppose the motion for summary judgment is evidence that the moving parties knew that plaintiff had been assigned to work in an area of the prison that was not safe for him. Even if they knew that plaintiff's work assignment would violate departmental or prison policy, defendants cannot be held liable unless they knew of the assignment. *See Myron v. Terhune*, 457 F.3d 996, 999-1000 (9th Cir. 2006) (violation of state regulation where no federal right is implicated not

---

[1] Defendants Rustad, Naramore, Saldona and Cortes have not moved for summary judgment.

[2] "EOP" stands for "Enhanced Outpatient Program." Defs.' Mot. for Summ. J., at 3. Neither party explains the significance of this program. The court thus infers that inmates who participate in it are not housed in protective custody, as plaintiff was.

1 remediable under section 1983). Plaintiff has not explained what specific additional discovery
2 he would undertake and how that discovery would uncover evidence that would defeat summary
3 judgment. As explained below, there is no evidence that defendants knew Walker, Minor,
4 Garcia, Moreno, Vance or Neis plaintiff was assigned to work outside the sensitive needs area of
5 the prison and plaintiff has not proposed specific additional discovery that would lead to
6 evidence demonstrating that fact. Thus, plaintiff's Rule 56(f) request must be denied.

**II.     Facts**

At the time of the events alleged plaintiff was confined at California State Prison, Sacramento (CSP-Sac). Defs.' Stmt. of Undisp. Facts ("SUF") 1. Defendant James Walker was an Associate Warden at CSP-Sac. SUF 2; Compl., at p. 4. Defendants Narramore and Rustad supervised plaintiff in his job. Defs.' Stmt. of Undisp. Facts, Exhibits Attached Thereto ("DX"), DX C, p. 12. Defendant Sergeant Minor reviewed plaintiff's grievance about the attack. DX A, p. 46. Vance and Neis were captains, Moreno was a lieutenant, and Minor and Garcia were sergeants. Compl., at p. 4. Defendants Saldana and Cortes were guards. *Id.*

On June 13, 2000, plaintiff was convicted of two counts of first degree murder and sentenced to life in prison without the possibility of parole. DX A, p.2. At the time of his conviction, he had been a member of a gang known as the "Grape Street Crips" for about 22 years. DX C, 9:11-23. Prison officials considered him to be a leader of a prison group that was associated with this gang. DX C, 10:23-11:3. In the summer of 2005, while he was housed in the general population, he dropped out of the gang. DX C, at 9:24-25. On June 20, 2005, staff received an anonymous note that plaintiff would be in danger if he remained in the general population. DX A-1, p. 15. That same day, prison officials placed him into administrative segregation and commenced an investigation into the safety and security issues the note presented. DX A-1, p. 15. Officer Zamudio of prison's Gang Investigation Unit began investigating whether plaintiff would be at risk of harm if he remained in the general population. DX D, ¶¶ 2, 3. During Zamudio's June 20, 2005, interview of plaintiff, plaintiff stated, "I'm

3

through with all this gang banging. I'm done and ready to lock up. I need to lock up because I'm a target now." DX D, ¶ 6.

Plaintiff gave Zamudio two notes from other prisoners suggesting that plaintiff was having trouble with the gang and that he was targeted for an assault. *Id.* Prison officials later debriefed plaintiff, learning which Crips members had weapons, who were the leaders and who was dealing and using drugs. DX D, ¶ 7. Prison officials decided to investigate plaintiff's statements, and if they could verify the information, they would place plaintiff on a "sensitive needs yard." DX A-1, p. 14; DX D, ¶ 7.

On June 29, 2005, plaintiff appeared before the Institutional Classification Committee (ICC) for review of his administrative segregation placement. DX A-1, p. 13. The only defendant who was on that committee was defendant Walker. DX A-1, p. 13. The Committee decided to retain plaintiff in administrative segregation until Officer Zamudio completed his investigation. DX A-1, p. 13. Plaintiff appeared before the Committee again on August 10, 2005. DX A-1, p. 14. The Committee found that plaintiff had existing enemies within the general population of Facilities A, B and C, and recommended that he be transferred to a different prison. DX A-1, p. 14. Plaintiff's file contained a list of enemies, none of whom were located in the EOP housing unit. DX A-1, pp. 14, 21-22. After reviewing plaintiff's central file and discussing the matter with plaintiff, the Committee decided to hold plaintiff in administrative segregation until he could be transferred. DX A-1, p. 14. Nothing in the Committees' findings or comments suggests that Walker knew plaintiff would be assigned to work in an EOP area of the prison. On August 18, 2005, a Classification Staff Representative ("CSR"), again someone who is not a defendant here, approved the Committees' recommendation for a 90-day extension of his administrative segregation placement, to give Zamudio time to complete his investigation. DX A, p. 15.

On September 22, 2005, plaintiff was approved to be transferred to a different prison. DX A-1, p. 16. However, a lack of beds delayed the transfer. DX A-1, p. 16. Thus, a

4

1  Classification Staff Representative approved plaintiff to remain in administrative segregation for
2  his own safety until he could be transferred. *Id.* By September 26, 2005, Zamudio had
3  completed his investigation. DX A, p. 16. Thus, a classification committee met, and after
4  reviewing plaintiff's file, recommended that plaintiff be released to A-Facility. *Id.* It appears
5  that defendant Moreno participated in this review. *Id.* Plaintiff was deemed a sensitive needs
6  prisoner because of his association with a "black disruptive group." *Id.* But nothing in the
7  committee notes or comments suggests any knowledge that plaintiff would be assigned to work
8  in an EOP area of the prison.

9      Lieutenant D. Padilla, who is not a defendant, assigned plaintiff to work as a "haircutter."
10 DX A-1, p. 23. Plaintiff's supervisors, Rustad and Narramore, told plaintiff that part of his job
11 entailed going to the EOP area of the prison. DX C, 12:8-18; Am. Compl., at p. 4. Prisoners
12 with questions or concerns about their job must seek clarification from their supervisors. DX E.
13 Having voiced no objections, plaintiff began his new job on October 20, 2005. DX C, 12:19-21;
14 13:10-14; DX A-1, p. 23. Plaintiff went to where EOP prisoners were housed about once a
15 week for 15 minutes. DX C, 13:15-22; 22:6-8.

16     Unbeknownst to plaintiff, prison officials created a new position for an EOP prisoner to
17 cut the hair of other EOP prisoners. Thus, on November 8, 2005, a prisoner named Hughes was
18 assigned the responsibility for cutting the hair of other EOP prisoners. DX F; DX G. However,
19 on December 7, 2005, plaintiff left to work in the EOP housing unit. DX A-1, p. 47. When he
20 arrived at the gate and asked whether his services were needed that day, the guard told him to
21 "head down." DX A-1, p. 47. Plaintiff went to the day room, where he saw five or six prisoners
22 he did not recognize. DX C, p. 22:13-18. He set up his work station, and went to get a chair.
23 DX A-1, p. 47; DT 22:13-23:6; DX C, 22:13-23:6. When he returned, he saw an EOP prisoner
24 cutting another prisoner's hair. DX C, 23:4-14. Plaintiff felt uncomfortable about staying in the
25 EOP unit, but he did not tell corrections staff. DX C, 24:10. Plaintiff talked with the EOP
26 barber for a few minutes, and while he did so, another prisoner, Evans, an EOP prisoner, came

up behind him and struck him on the right side of the face.  DX C, 24:3-28:8; DX A, 30. Defendant Cortez heard screaming in C-Section, and saw Evans hitting plaintiff while plaintiff covered his head to protect himself.  DX A-1, p. 30; DX C, 30:20-22.  Cortez sounded an alarm and ordered Evans to get down on the ground.  DX A-1, p. 30.  When Officer Schneider, who is not a defendant, responded, Evans was on the ground and plaintiff was walking out of C-Section with blood on his face.  DX A-1, p. 39.  Plaintiff was handcuffed and taken for medical evaluation.  DX A-1, p. 39.  The other prisoner, Evans, was not included in the list of people identified as enemies of plaintiff.  DX A-1, pp. 14, 21-22.

Upon examination, a nurse found abrasions to plaintiff's right cheek and forehead, a cut above his right eye, right shoulder pain and a sore jaw.  DX A-1, p. 43.  An x-ray showed that plaintiff's jaw was fractured.  DX H-1, p. 2.  Plaintiff complained of pain on the right side of his jaw and on the right side of his upper chest.  DX H-1, p. 2.  A physician determined that plaintiff's ribs were not fractured, but his jaw was.  DX H-1, p. 2.  Plaintiff was treated for an injury to his hand and for his broken jaw at U.C. Davis Medical Center.  DX H-1, p. 3.

**II.     Standards on Summary Judgment**

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts.  *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).
Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

////

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

Thus, to overcome summary judgement an opposing party must show a dispute that is both genuine, and involving a fact that makes a difference in the outcome.[3] Two steps are necessary. First, according to the substantive law, the court must determine what facts are material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.,* at 248.

////

---

[3] On October 18, 2006, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

7

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The opposing party must demonstrate that the disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631. There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex*, 477 U.S. at 323. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See Anderson*, 477 U.S. at 248.[4] Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*,

---

[4] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

8

477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether the defendants acted with deliberate indifference to the plaintiff's safety. Equally critical is that "deliberate indifference" is an essential element of plaintiff's cause of action. Therefore, to withstand defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

**III.    Analysis**

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Here, plaintiff's action arises under 42 U.S.C. Section 1983 and the Eighth Amendment. To prevail at trial, he must prove that the defendant deprived him of his Eighth Amendment rights while acting under color of state law. To prove an Eighth Amendment violation, he must show by a preponderance of competent evidence that the defendant knew plaintiff faced a risk of harm that "is not one that today's society chooses to tolerate," and that the defendant was "deliberately indifferent" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). As discussed below, plaintiff has failed to establish a genuine dispute for trial over this material issue.

////

Plaintiff claims that defendants Walker, Minor, Garcia, Moreno, Vance and Neis were deliberately indifferent to his safety by permitting him to work in an area of the prison that they knew was unsafe for him. These defendants contend that there is no genuine issue about whether they were deliberately indifferent to plaintiff's safety because they never knew plaintiff was required to go into an EOP area.

The Eighth Amendment requires that the conditions of a prisoner's confinement, even if harsh, have some legitimate penological purpose. *See Hudson v. Palmer*, 468 U.S. 517, 584 (1984); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). It is important to bear in mind that confinement "strips [prisoners] of virtually every means of self-protection." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994*).* Thus, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* A failure to protect prisoners from attacks by other prisoners amounts to an Eighth Amendment violation if the deprivation is "objectively, sufficiently serious" and prison officials had a "sufficiently culpable state of mind," namely deliberate indifference. *Id.* at 834. To be deliberately indifferent, a prison official must know of, or infer from the circumstances, a risk of harm or injury that "is not one that today's society chooses to tolerate," yet fail to take reasonable actions to mitigate or eliminate that risk. *Farmer*, 511 U.S. at 837.

Here, there is no dispute that a fellow prisoner attacked plaintiff, breaking his jaw. Defendants do not argue that this deprivation is not serious for purposes of the Eighth Amendment. Rather, they assert that there is no evidence that they knew plaintiff was required to go into an EOP area of the prison to work. It is undisputed that information in plaintiff's central file showed that plaintiff was associated with a "disruptive group" within the prison and that he had withdrawn from it. It also is undisputed that prison officials placed him in protective housing and recommended he be transferred for his safety and for prison security. While there is evidence that plaintiff's attacker was not listed as one of his "enemies," this is inapposite.

////

Knowledge of who the specific attacker may be is not the only indicator of risk. It is undisputed that plaintiff was a target for violence at the hands of members of the group from which he had withdrawn. It is true that knowledge of a documented enemy creates an obligation to protect a prisoner from those identified persons. It is equally true that the fact of former gang association creates an obligation to protect a prisoner from gang-related retaliation in general. Retaliatory acts can be perpetrated by any present gang member, prospective member or simply a coerced or well-rewarded non-member.

Nonetheless, it remains plaintiff's burden to show indifference to a known danger. The weakness in plaintiff's opposition is that there is no evidence that before the attack, defendants Walker, Minor, Garcia, Moreno, Vance or Neis knew that plaintiff was assigned to work in a part of the prison where another prisoner might attack him. An official who is not a defendant, Lieutenant D. Padilla, assigned plaintiff to work as a haircutter, and Rustad and Narramore, directed plaintiff to work in the EOP area of the prison at least once a week. Nothing in the record suggests that Walker, Minor, Garcia, Moreno, Vance or Neis instructed plaintiff to work there or that they knew Rustad and Narramore had so instructed him. There is no evidence that these defendants knew, or knew of facts from which they inferred, that plaintiff for any reason would be outside his protected area of the prison. Thus, even if they knew that the security in the EOP unit was insufficient for a sensitive needs prisoner such as plaintiff, there is no genuine dispute for trial. They cannot be said to have failed to have taken reasonable measures to protect plaintiff if they did not know that plaintiff required such protection. No reasonable jury could find in plaintiff's favor as to these defendants. Thus, the motion for summary judgment by Walker, Minor, Garcia, Moreno, Vance and Neis must be granted.

Defendants also assert that they are entitled to qualified immunity. Because the court has resolved the summary judgment motion on the merits in favor of defendants, the court does not reach the question of qualified immunity. *See Wilkie v. Robbins*, 127 S.Ct. 2588, 2608 (2007).
////

### IV. Conclusion

For the reasons stated above, the court finds that plaintiff's request for additional discovery must be denied. Furthermore, the court finds that there is no genuine dispute about whether defendants Walker, Minor, Garcia, Moreno, Vance or Neis was deliberately indifferent to plaintiff's need for safety. Accordingly, these defendants are entitled to judgment as a matter of law. Claims against defendants Rustad and Narramore will proceed to trial.

Accordingly, it is ORDERED that plaintiff's Rule 56(f) request is denied.

Further, it is hereby RECOMMENDED that:

1. The August 27, 2007, motion for summary judgment filed on behalf of Walker, Minor, Garcia, Moreno, Vance and Neis be granted;

2. Plaintiff be given 30 days to file a pretrial statement;

3. Defendants Rustad, Narramore, Saldana and Cortes be given 20 days from the date of service of plaintiff's pretrial statement to file a pretrial statement.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 26, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE